# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| BLAKE FERRIN, | Case No. 20-CV-841 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON MOTIONS FOR |
| | SUMMARY JUDGMENT |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | |

---

After Blake Ferrin petitioned for Chapter 7 bankruptcy, he learned that Experian Information Solutions, Inc. ("Experian") was reporting two accounts on his credit report inaccurately by failing to report them as discharged in his bankruptcy. Ferrin sued Experian for violations of the Fair Credit Reporting Act ("FCRA"). Experian now moves for summary judgment and to exclude certain expert testimony, and Ferrin moves for partial summary judgment. (ECF Nos. 66, 75.) For the reasons below, the Court grants in part and denies in part Experian's motion and grants in part and denies in part Ferrin's motion.

## BACKGROUND

### I.    Experian and Its Bankruptcy Scrub Procedures

Experian is a credit reporting agency ("CRA") that furnishes consumer reports to third parties under 15 U.S.C. Section 1681a(d). Experian has a two-step "scrub" procedure

it employs when a consumer's debts have been discharged in bankruptcy.[1] (ECF No. 69

("Cave Decl.") ¶ 15.) The first step is the "initial" bankruptcy scrub. (*Id.*) This scrub runs

within eight days of a notification from Lexis[2] that a consumer's bankruptcy was

discharged. (*Id.*) Experian's initial scrub excluded accounts that were in a "current" status

when the consumer filed for bankruptcy unless those debts were more than 90 days

delinquent at the time of the scrub.[3] (*Id.*)

---

[1] Experian is a party to the 2008 settlement order in *White v. Experian Information Solutions, Inc.*, a case addressing the reporting of debts discharged in consumer bankruptcies. No. 05-CV-1070 DOC, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) ("*White* Order"). The parties' settlement agreement incorporated procedures that use "assumptions regarding the likely discharged status of certain pre-bankruptcy tradelines." *Id.* at *3. Under the *White* Order, Experian and other CRAs agreed to adopt procedures for reporting accounts after consumer bankruptcies, including updating certain unsecured debts as discharged in bankruptcy and with a zero balance. *Id.* at *10 (*White* Order ¶¶ 3.2(b)(ii)(E), 3.2(c)(ii)(E)). The *White* Order requires that the CRAs exclude certain debts from a bankruptcy scrub, including accounts with a "Current Status" when the consumer files bankruptcy. *Id.* at *10 (*White* Order ¶ 3.2(b)(ii)(E)). It also requires the CRAs "to assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of discharge of these categories of debt, and without either the creditors or Consumers reporting the debt to Defendants as having been discharged." *Id.* at *13 (*White* Order ¶ 5.1).

[2] "Lexis" refers to LexisNexis Risk Data Management Inc., a company that provides public record information about Chapter 7 bankruptcies, including when a particular consumer files for bankruptcy or receives a discharge in bankruptcy order. (Cave Decl. ¶¶ 11–13.)

[3] In 2021, Experian changed its policy so that its initial scrub updates accounts that have an open date before the consumer's Chapter 7 bankruptcy petition, are not in finalized status when the consumer filed the petition, and are 30 or more days delinquent as of the date of the scrub. (Cave Decl. ¶ 15; *see* ECF No. 80-5 ("Cave 3d Decl.") ¶ 5.)

Experian's second step is a series of "look-back" bankruptcy scrubs. (*Id.* ¶ 17.) At the time frame relevant to this case, Experian conducted look-back scrubs "on the first Monday of every other month for an 18-month period following [the] bankruptcy discharge."[4] (*Id.*) The look-back scrub is intended to catch pre-bankruptcy accounts that were excluded from the initial scrub because they were current, but later progressed to more than 90 days delinquent. (*Id.* ¶¶ 16–17.)

## II.    Ferrin's Bankruptcy and Accounts

Ferrin petitioned for Chapter 7 bankruptcy on February 12, 2019, and some of his accounts were discharged a few months later, on May 13, 2019. (Cave Decl. ¶¶ 20, 23.) Experian received notice of Ferrin's bankruptcy petition and discharge the day after each was docketed. (*Id.*; ECF No. 70-5.) Ferrin's claim relates to two accounts discharged in bankruptcy: (1) Firefly Credit Union FCU partial #9141 ("Firefly"); and (2) TD Bank USA/Target partial #5975 ("Target"). At the time of the bankruptcy filing, both the Firefly and Target accounts were reporting as current. (Cave Decl. ¶ 21.)

Within days of Ferrin's bankruptcy discharge in May, Experian ran its initial scrub on Ferrin's credit file. (*Id.* ¶ 24.) At that time, the Firefly account reported thirty days past due. (*Id.*) The Target account reported thirty days past due in April, and current again in

---

[4] In 2021, Experian changed its policy to conduct its look-back scrubs on the first Monday of every month. (Cave Decl. ¶ 17; *see* Cave 3d Decl. ¶ 6.)

May.[5] (*Id.*) Because the Firefly and Target accounts were current when Ferrin *filed* for bankruptcy, Experian did not update these accounts to reflect the discharge in bankruptcy. (*Id.*)

*Firefly account*. In April—after Ferrin filed his bankruptcy petition, but before the discharge in bankruptcy—Firefly tried to report a CII code of "A," reflecting that a debt was included in Ferrin's Chapter 7 bankruptcy petition. (Cave Decl. ¶¶ 11, 22; ECF No. 80-1 ("Cave 2d Decl.") ¶ 7.) Experian rejected this update because it did not comply with the Metro-2® format, an industry standard for reporting accounts and bankruptcy information. (Cave Decl. ¶¶ 8, 22; ECF No. 70-2 ("Cave Expert Report") at 8.) Experian requires data furnishers to report credit information using the Metro-2® format. (Cave Expert Report at 8.) Experian will reject a nonconforming update and advise the data furnisher of the error so that it can be corrected. (*Id.*) While Firefly acknowledged that "[i]t seems to make sense that [Experian] might reject" its nonconforming updates, (ECF No. 71-3 at 43 (filed under seal)), the parties dispute whether Firefly received notice of Experian's rejection. (*Id.* at 45 (Firefly representative testifying that its staff told her they had not received any objection or request for an update).)

In June, Firefly tried to report a CII code of "E" to Experian, conveying that Ferrin's debt had been discharged in bankruptcy. (Cave Decl. ¶¶ 11, 27.) Experian again rejected

---

[5] Ferrin made a payment on the Target account after filing for bankruptcy. (ECF No. 70-6 ("Ferrin Dep.") at 47.)

Firefly's update because it failed to comply with the Metro-2® format. (*Id.* ¶ 27; Cave 2d Decl. ¶ 8.) In July, Firefly reported the update—this time in compliance with the Metro-2® format—that its account was charged off and over ninety days late.[6] (Cave Decl. ¶ 31; *see* Cave 2d Decl. ¶ 9.) On August 6, Experian ran its look-back scrub on Ferrin's credit file. By that time, the Firefly account was more than 90 days delinquent, so Experian updated the account to report it as discharged in bankruptcy. (Cave Decl. ¶ 32.)

*Target account.* As with the Firefly account, Ferrin's Target account was current when he filed his bankruptcy petition. In May, Target sent Experian two updates about Ferrin's account. (Cave 2d Decl. ¶ 10.) Experian did not process the first update because it included no CII information. (*Id.*) The second update added "E" to the CII field, but did not report a required "Date of First Delinquency." (*Id.*; Cave Decl. ¶ 25.) Experian rejected this update because it failed to comply with Metro-2® reporting guidelines.[7] (Cave Decl. ¶ 25; Cave 2d Decl. ¶10.) Because the Target account never progressed past a "current" status, it was not scrubbed. (Cave Decl. ¶ 32.)

*Ferris's Experian credit report.* In July, Ferrin requested his consumer disclosure from Experian. (Cave Decl. ¶ 28.) The July 2, 2019 disclosure inaccurately reported that

---

[6] For both of Firefly's unsuccessful updates, it incorrectly reported a "0" in the "ECOA" field. (Cave Decl. ¶¶ 11, 22, 27; Cave 2d Decl. ¶¶ 7, 8.) Firefly eventually correctly reported a "1" in the ECOA field. (Cave Decl. ¶ 31; *see* Cave 2d Decl. ¶ 9.)

[7] The parties dispute whether Target received notice of Experian's rejection. (*See generally* ECF No. 80-4.)

the Firefly account had a balance of $9,454 thirty days late and $341 past due, and that the Target account had a balance of $427 and was current. (*Id.* ¶ 29; ECF No. 71 (Ferrin's July 2, 2019 credit report) (filed under seal).) In contrast, two other CRAs had reported that the same accounts were discharged in bankruptcy with no balance owed by June 2019. (*See* ECF Nos. 87-2 (Trans Union declaration), 87-3 (Equifax declaration).)

Between May 21 and August 6, Ferrin's credit history was viewed several times in "soft inquiries." (ECF No. 71-4 at 7–8 (Ferrin's May 21, 2020 credit report (filed under seal)); *see* Cave Decl. ¶ 19 (attesting that soft inquiries include prescreen inquiries, account review inquiries, or identity authentication inquiries).)

Ferrin testified that he had not personally looked at any of his Experian credit reports; his law firm found the discrepancies and contacted him. (Ferrin Dep. at 39, 88.) Though his credit report contained a notice that he could dispute any information by contacting Experian, Ferrin did not do so. (*Id.* at 37–38; ECF No. 71 at 10.)

## III.   This Litigation

In March 2020, Ferrin sued Experian for failing to maintain reasonable procedures to assure maximum possible accuracy in preparing Ferrin's credit reports and credit files it published and maintained concerning Ferrin in violation of Section 1681e(b). (ECF No. 1 ¶ 13; ECF No. 57 ("Am. Compl.") at 7.) Ferrin also alleges that Experian "is reporting [Ferrin] owes debt that he does not actually owe, damaging his revolving debt utilization rate and credit scores." (Am. Compl. at 5.) When Ferrin brought this action,

Experian was reporting the Firefly account correctly (as discharged in bankruptcy with no balance) and the Target account incorrectly (as current). (Cave Decl. ¶ 32.) Once served with the lawsuit, Experian applied its dispute procedures and updated the Target account. (ECF No. 71-4.)

## ANALYSIS

### I.      Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.      Section 1681e(b) Claim

Section 1681e(b) requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information" in consumer reports. 15 U.S.C. § 1681e(b). Section 1681e(b) is not a strict liability statute, so inaccurate information in a report is not sufficient for liability. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814–15 (8th Cir. 1979). To prevail on a Section 1681e(b) claim, a plaintiff must prove that: (1) the CRA

reported inaccurate credit information about the plaintiff, (2) the CRA failed to follow reasonable procedures intended to assure the accuracy of its reports, (3) the plaintiff suffered harm, and (4) the CRA's failure to follow reasonable procedures was the cause of that harm.[8] *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011) (citations omitted). As explained below, summary judgment is appropriate for Ferrin on the first element of this claim, and summary judgment is not appropriate for the rest of the elements.

### A.    Inaccurate Reporting of Credit Information

Experian does not dispute that it reported inaccurate credit information about Ferrin, and Ferrin moves for partial summary judgment on this issue. (ECF No. 77 at 13.) Experian was aware of Ferrin's Chapter 7 bankruptcy filing and discharge dates, and inaccurately reported outstanding balances for Ferrin's Firefly and Target accounts and that the Firefly account was past due. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (finding that Experian inaccurately reported the existence of a debt, the balance allegedly owed, the amount past due, and how long it was past due, following plaintiff's bankruptcy-debt discharge). Because no genuine issue of material fact exists as

---

[8] While Experian stresses that Ferrin did not contact Experian about the inaccurate credit information, Section 1681e(b) does not require a consumer to notify a CRA of an error. *Alsibai v. Experian Info. Sols., Inc.*, 488 F. Supp. 3d 840, 847 (D. Minn. 2020); *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 769–70 (D. Minn. 2020).

to whether Experian reported this information inaccurately, the Court grants summary judgment in Ferrin's favor on this limited issue.

## B.   *Reasonable Procedures*

Experian is not liable for the inaccuracies on Ferrin's credit report so long as it maintains "reasonable procedures." *Hauser*, 602 F.2d at 814–15. Both parties seek summary judgment on whether the procedures Experian followed in reporting Ferrin's credit information were reasonable as a matter of law. "Whether a CRA followed reasonable procedures when it generated an inaccurate credit report is 'a jury question in the overwhelming majority of cases.'" *Gohman v. Equifax Info. Servs., LLC*, 395 F. Supp. 2d 822, 826 (D. Minn. 2005) (citations omitted). Because the reasonableness of Experian's procedures is not beyond question, the Court does not grant summary judgment for either party.

### 1.   *Systemic Problems and the Legal Status of a Particular Debt*

A debtor (like Ferrin) who receives a Chapter 7 bankruptcy discharge is freed from personal liability on all debts that arose before the date of filing the bankruptcy petition, unless the debt falls under specific exceptions. *See* 11 U.S.C. § 727(b); *id.* § 523 (listing exceptions to discharge). Ferrin's Firefly and Target accounts do not fall within these exceptions. *See generally Morris*, 478 F. Supp. 3d at 769 ("[A]s the *White* settlement makes clear, the CRAs knew that unsecured consumer debts . . . are typically discharged in Chapter 7 proceedings."). According to Ferrin, Experian's procedures that led to the

inaccurate reporting of his Firefly and Target accounts were unreasonable because Experian was on notice that its procedures do not track industry standards and were less accurate than other CRAs' procedures.[9] *See Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1360 (N.D. Ga. 2021) ("Plaintiff has shown that Trans Union and Equifax did not report the same error related to the Account, which suggests that they have implemented stricter procedures to produce greater accuracy.").

Experian asserts that its procedures were reasonable as a matter of law because Section 1681e(b) does not require a CRA to determine the legal status of a bankruptcy on a particular debt. "While CRAs are not obligated to come to legal conclusions, '[t]aking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, but does not require the [CRA] to make any legal determinations about the underlying claim.'" *Laura v. Experian Info. Sols., Inc.*, No. 20-CV-01573, 2022 WL 823853, at *3 (N.D. Ill. Mar. 18, 2022) (citing *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021)). Experian's contention that it is not expected to make a legal determination of the effect of a bankruptcy on a debt is true as far as is it goes. But it does not resolve the ultimate issue—that is, whether its procedures were reasonable as a matter of law. The evidence shows that Experian had notice of Ferrin's Chapter 7

---

[9] Experian argues that Rule 407 of the Federal Rules of Evidence precludes consideration of changes Experian made to its scrub procedures since this litigation began. Even if the Court were to consider this evidence, it would not grant summary judgment for either party as the evidence does not resolve the issue of reasonableness.

bankruptcy, and knew the Firefly and Target accounts predated his bankruptcy. Moreover, "[f]rom a legal standpoint, there is nothing particularly complicated about the effect of a Chapter 7 bankruptcy." *Benjamin*, 561 F. Supp. 3d at 1360 (noting that Experian's procedures "recognize the consequences of a general discharge in Chapter 7 bankruptcy"). "If anything, there is a presumption in favor of discharge, not the other way around." *Id.* at 1356. Given the information Experian had about Ferrin's debts and bankruptcy, the Court cannot determine the procedures were reasonable as a matter of law.

Experian also contends that its procedures were reasonable as a matter of law because it may rely on presumptively reliable institutions—here, Firefly and Target— until it has notice that those institutions are unreliable. The Court is unpersuaded on this point as well. In *Sarver v. Experian Information Solutions*, the Seventh Circuit recognized that the FTC does not hold a CRA responsible "where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the [CRA] receives notice of systemic problems with its procedures." 390 F.3d 969, 972 (7th Cir. 2004) (citing Commentary of the Fed. Trade Comm'n to the FCRA, 16 C.F.R. pt. 600, app'x § 607 at 3.A). There, the plaintiff argued that Experian's procedures were unreasonable because "someone should have noticed" that only certain accounts were shown as involved in bankruptcy—which, if adopted, would require Experian to examine each report for anomalous information and, if found, investigate it. *Id.* The

Seventh Circuit held that *"[i]n the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist*, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily." *Id.* (emphasis added).

Firefly and Target arguably provided notice that Experian's own information was inaccurate, but Experian rejected those updates because they failed to conform with the Metro-2® format. Experian claims that it "accurately reported the Metro-2® conforming information provided by Firefly and Target," and was not required to do anything else upon receiving the nonconforming updates. (ECF No. 68 at 20.) Courts have found that "industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA." *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-CV-0587-GMN-NJK, 2018 WL 1145804, at *7 (D. Nev. Mar. 1, 2018) (finding that failure to conform to Metro 2® guidelines was not a per se FCRA violation), *aff'd sub nom. Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308 (9th Cir. 2019). Experian asserts that rather than establishing accuracy, Metro-2® "establishes consistent means of formatting information" and that the data furnisher determines the accurate status of a consumer's legal liability for a debt following bankruptcy. (ECF No. 91 at 3); *see Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) ("Only furnishers are tasked with accurately reporting liability."). Firefly and Target arguably fulfilled that obligation when they provided Experian updates showing Ferrin's accounts as discharged in bankruptcy. While Experian contends that it

was right to reject the nonconforming updates, Ferrin maintains that the formatting errors were immaterial to accurately report that an account is discharged in bankruptcy or has zero balance. The Court concludes that it is for a jury to decide whether Experian's procedures, including the procedure that led to Experian reject Firefly's and Target's updates, were reasonable.

A jury may also use as evidence the fact that other CRAs handled the situation differently, correctly reporting the status of Ferrin's Firefly and Target accounts. *See generally Hernandez v. Experian Info. Sols., Inc.*, No. 21-55588, 2022 WL 1315306, at *1 n.3 (9th Cir. May 3, 2022) (noting that Experian's compliance with Section 1681e(b) was "not obvious" since "neither Transunion nor Equifax made the same reporting errors"); *Sunseri v. Experian Info. Sols., Inc.*, No. 21-55583, 2022 WL 1315303, at *1 n.2 (9th Cir. May 3, 2022) (same); *Laura*, 2022 WL 823853, at *3 ("Experian's bankruptcy scrub procedures illustrate that it is not unreasonably burdensome for Experian to parse these limited exceptions, particularly where creditors code the types of accounts that bankruptcy exempts."). The fact that other CRAs did not make the same error may lead the jury to "reasonabl[y] infer[] that [Experian] failed to follow reasonable procedures" in Ferrin's case. *Gadomski v. Equifax Info. Servs., LLC*, No. 2:17-CV-00670-TLN-AC, 2020 WL 3841041, at *5 (E.D. Cal. July 8, 2020) (denying motion to dismiss § 1681e(b) claim).

2.     The *White* Order

Experian next contends that its procedures were reasonable because Experian followed the procedure mandated by the federal injunction imposed on Experian and other CRAs in the *White* Order. *See White,* 2008 WL 11518799.[10] Under the *White* Order, the CRA defendants agreed to adopt procedures for reporting accounts after consumer bankruptcies, including updating certain unsecured debts as discharged in bankruptcy and with a zero balance, except that the CRAs are to exclude certain tradelines that are reporting in a "current status" as of the bankruptcy date. *Id.* at *10 (*White* Order ¶¶ 3.2(b)(ii)(E), 3.2(c)(ii)(E).) The Central District of California determined that these procedures were "reasonable procedures to assure the maximum possible accuracy of Defendants' reporting of credit information" about consumers discharged in Chapter 7 bankruptcy, and that the procedures were "conclusively deemed to comply with FCRA," including Section 1681e(b).[11] *Id.* at *14 (*White* Order ¶ 5.4).

---

[10] Ferrin disputes whether the *White* Order mandated actual procedures. (ECF No. 86 at 27; ECF No. 95 at 16.) Because the *White* Order is neither binding nor dispositive of whether Experian's procedures were reasonable, the Court need not address this issue.

[11] It is undisputed that Ferrin is not a party or class member in *White*. Like other courts in this District, this Court finds that the *White* Order is not binding on it. *E.g.*, *Morris*, 478 F. Supp. 3d at 771 (finding that the *White* Order is not binding, and denying Experian's motion to dismiss); *Alsibai*, 488 F. Supp. 3d at 847 (noting that the *White* Order is not binding, and denying Experian's motion for judgment on the pleadings).

Ferrin's Firefly and Target accounts arguably fell within this exception because both accounts reported a "current status" when Ferrin filed his bankruptcy petition.[12] So Experian maintains that the *White* Order required Experian to assume that neither account was included in the bankruptcy discharge, and because Experian complied with the *White* Order, its procedures were reasonable. But the fact "[t]hat a report complies with the *White* settlement does not by itself establish that the report complies with [Section] 1681e(b)." *Morris*, 478 F. Supp. 3d at 771.

The Ninth Circuit recently addressed the *White* Order in three cases, explaining that "[r]easonableness is not a static issue, and procedures that met the high bar of [Section] 1681e(b) fourteen years ago may not today."[13] *Sunseri*, 2022 WL 1315303, at *1 (reversing dismissal of § 1681e(b) claim); *Wheeler v. Experian Info. Sols., Inc.*, No. 21-55585, 2022 WL 1315301, at *1 (9th Cir. May 3, 2022) (same); *Hernandez*, 2022 WL 1315306, at *1 (same). In *Hernandez*, the court noted that the reasonableness of a CRA's procedures and whether the CRA followed them are "jury questions in the overwhelming majority of cases." 2022 WL 1315306, at *1 (citation omitted); *see also id.* at *1 n.3 (noting that Experian's compliance with § 1681e(b) was not obvious where other CRAs did not make

---

[12] Indeed, Ferrin made a payment to his Target account after he filed for bankruptcy.

[13] After Ferrin notified the Court of this supplemental authority, Experian objected to the brief accompanying Ferrin's notice as not complying with Local Rule 7.1. (ECF Nos. 110–11.) Experian does not object to the submission of supplemental authority. (ECF No. 111 at 2.) The Court sustains Experian's objection and disregards Ferrin's brief filed at ECF No. 110.

the same reporting errors "though they were equally bound by *White's* terms"); *Sunseri*,

2022 WL 1315303, at *1 n.2 (same). In light of the Ninth Circuit's recent decisions about

the *White* Order, the Court finds that compliance with the *White* Order does not

conclusively establish the reasonableness of Experian's procedures.[14]

For all of these reasons, the Court finds that genuine issues of material fact exist as

to whether Experian's procedures were reasonable, and thus denies summary judgment

on this issue.

### C.    *Damages Caused by Experian*

A closer issue is whether Ferrin has suffered any damages. "[T]o maintain a claim

for negligent noncompliance under the FCRA, a plaintiff must show actual damages

resulting from the CRA's reporting error." *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp.

2d 1220, 1242 (D. Minn. 2013) (citations omitted), a*ff'd*, 564 F. App'x 878 (8th Cir. 2014).

The parties seek summary judgment on the issue of Ferrin's damages, which Ferrin

claims consist of emotional distress damages.[15] (ECF No. 77 at 24.)

---

[14] Experian asserts that its procedures exceed those required by the *White* Order because it also uses periodic look-back scrubs. Given that other CRAs did not make the same reporting errors but correctly reported the Firefly and Target accounts as discharged in bankruptcy, the Court cannot find that Experian's procedures were reasonable as a matter of law.

[15] Ferrin was not denied credit based on Experian's reporting, (ECF No. 70-7 at 2), and testified that he does not know if he was approved at less favorable credit terms for a Capital One credit card as a result of Experian's inaccurate reporting. (Ferrin Dep. at 109–10.) Ferrin was allegedly interested in rebuilding his credit after his bankruptcy, but was

Emotional distress damages "must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" *Edeh*, 974 F. Supp. 2d at 1242 (citing *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013)). Ferrin bears the burden to show that he "suffered damages as a result of the inaccurate information." *Id.* (citation omitted).

At his deposition, Ferrin described telling his friend Gerry Seiler "that Experian was still showing that I had balances not closed out on my bankruptcy and how frustrated I was." (Ferrin Dep. at 114.) Ferrin testified that Experian's errors "made [him] sick to [his] stomach. It was always in the back of [his] head like what's going on, like this wasn't done right." (*Id.* at 126–27.) When asked if he had any other manifestations of emotional distress, Ferrin responded, "This [deposition] going on right now, yes. But, no, that's it." (*Id.* at 128.) Ferrin's subsequent declaration attests that he experienced "extreme distress, anxiety, and frustration at Experian's inaccurate reporting of the debt," and "suffered effects of the stress and anxiety," including difficulty sleeping, agitation, and feeling "sick to my stomach to the point where I lost my appetite, and even lost a little weight from the stress."[16] (ECF No. 79 ¶¶ 7–8.) Seiler attests that Ferrin became "stressed out" and

---

too afraid to apply for opportunities because of the errors on his Experian credit report. (ECF No. 79 ¶ 6.)

[16] Experian objects to Ferrin's declaration and asks the Court to strike it as contrary to his deposition testimony. (ECF No. 91 at 7 & n.3.) The Court declines to do so. District courts "must use extreme care in examining such issues and only grant summary judgment where 'the conflicts between the deposition and affidavit raise only sham issues.'" *City of*

"short-tempered," "seemed tired and anxious," and that Ferrin told Seiler that he was "struggling with anxiety and sleeplessness" because Experian was reporting two of his accounts that were included in his bankruptcy as owing balances. (ECF No. 78 ¶¶ 5, 7, 8.) Ferrin was not medically treated for any psychological or emotional injury. (ECF No. 70-7 at 3–4.)

Ferrin's testimony and Seiler's corroborating declaration are enough to raise a genuine issue of material fact as to whether Ferrin suffered emotional distress damages as a result of Experian's inaccurate reporting. *See Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 835 (8th Cir. 1976) (affirming an award of emotional distress damages under the FCRA when plaintiff suffered "loss of sleep, nervousness, frustration and mental anguish" as a result of "grossly inaccurate" consumer credit reports); *Davis v. Fid. Info. Corp.*, No. 4:18-CV-00441-AGF, 2018 WL 6171438, at *3 (E.D. Mo. Nov. 26, 2018) (finding that plaintiff presented competent evidence of emotional distress where her affidavit stated that her interactions with credit furnisher caused her to "lose sleep, experience panic attacks, and have trouble concentrating at work," and was supported by her

---

*St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006) (citation omitted). Ferrin's affidavit "merely expands on the discussion [of the emotional damages described in his deposition]. It does not contradict [his] deposition testimony." *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 831 (8th Cir. 2020). And even if Ferrin's declaration could be construed as contradictory to his deposition, this Court is "not obligated to disregard it" because excluding the declaration "is limited to situations where the conflicts between the deposition and [declaration] raise only sham issues." *Id.* at 831 (citation omitted).

friend's affidavit). While this issue is razor-thin, the Court denies summary judgment and leaves it to a factfinder.

### D.   *Willful-Violation Claim*

Experian moves for summary judgment on Ferrin's claim that it willfully violated the FCRA. Willful failure to comply with the FCRA includes both knowing and reckless violations of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) ("FCRA provides for a private right of action if a creditor willingly, knowingly, or recklessly violated its provisions."). Recklessness involves "an unjustifiably high risk of harm that is either known or so obvious that it should have been known." *Burr*, 551 U.S. at 68 (citation omitted). A CRA recklessly violates the FCRA if it takes an action that "is not only a violation under a reasonable reading of the statute's terms, but shows that the [CRA] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. A violation is not willful where the CRA "followed an interpretation that could reasonably have found support in the courts . . . ." *Id.* at 70 n.20.

Experian argues that Ferrin cannot prove that it willfully violated the FCRA because it has a right to rely on the reporting of financial institutions, and because its reporting was dictated by the *White* Order. Courts have rejected similar FCRA claims for these reasons. *See, e.g.*, *Beers v. Experian Info. Sols., Inc.*, No. 20-CV-1797 (WMW/JFD), 2022

WL 891620, at *5 (D. Minn. Mar. 25, 2022) ("Beers has not identified, and the Court's research has not found, any applicable legal authority suggesting that the procedures Experian used here for reporting Chapter 7 bankruptcies willfully violate the FCRA."); *Peterson v. Experian Info. Sols., Inc.*, No. 20-CV-606 (DSD/ECW), 2021 WL 3116073, at *4 (D. Minn. July 22, 2021) ("Experian's reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or reckless."), *appeal filed*, No. 21-2863 (8th Cir. Aug. 20, 2021); *Benjamin*, 561 F. Supp. 3d at 1344 ("Experian's implementation of procedures that were consistent with those approved of in *White*" supports the conclusion "that Experian did not knowingly or recklessly violate the FCRA."). The Court finds these cases persuasive to the degree that they account for Experian's scrub procedures generally.[17] But these cases did not involve a CRA rejecting a furnisher's update that an account had been discharged in bankruptcy. *Cf. Beers*, 2022 WL 891620, at *5 (noting that a creditor had contacted Experian twice to update the status of the plaintiff's account, but "never noted that the account had been discharged in bankruptcy").

---

[17] Ferrin asserts that Experian's FCRA violation was willful because "Experian has long known that its scrub procedure does not assure maximum possible accuracy of reporting the presumptive effect of discharge in Chapter 7 bankruptcy," and was less accurate than other CRAs' procedures. (ECF No. 86 at 38.) He relies on the fact that since this litigation began, Experian changed its scrub procedure to one which would have caught the Firefly error. Experian's changes to its procedures do not impact the Court's decision on this issue.

To survive summary judgment on his willful non-compliance claim, Ferrin must present affirmative evidence showing Experian rejected Firefly's and Target's updates "deliberately and purposefully" or with "conscious disregard." *Edeh*, 974 F. Supp. 2d at 1245 (citation omitted). Experian rejected these updates because they failed to conform to the Metro-2® format. Ferrin cites no case or regulatory guidance holding that Section 1681e(b) requires a CRA to accept updates that—like Firefly's and Target's updates—violate industry standards. And Ferrin's expert testified that, at times, it is appropriate for a CRA to reject updates that do not conform to the Metro-2® standard. (ECF No. 91 at 8; ECF No. 71-2 at 57 (testifying that accepting account reporting that is incompletely formatted under Metro 2 is a breach of industry standard of care, and that it would depend as to whether a CRA should accept data that does not conform to Metro-2®) (filed under seal).) Ferrin has not raised a genuine issue of material fact as to whether Experian's rejection of the Firefly and Target updates "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Burr*, 551 U.S. at 69. Experian's motion for summary judgment on the willful violation claim is granted.

### III.      Motion to Exclude Testimony of Ferrin's Expert

Experian asserts that the Court should exclude certain expert testimony of Evan Henricks as inadmissible under Rule 702 of the Federal Rules of Evidence. Ferrin did not rely on Hendricks' testimony in connection with the motions for summary judgment. At

oral argument, both parties acknowledged that it would be more appropriate to address the admissibility of Hendricks's testimony in a motion in limine before trial. The Court agrees. Experian's request to exclude Hendricks's testimony is denied as not ripe.

## IV.        Experian's Request for Attorneys' Fees

In its opposition to Ferrin's motion for summary judgment, Experian asks the Court to award attorneys' fees under 28 U.S.C. Section 1927. (ECF No. 84 at 37–41.) Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Awards of fees under Section 1927 are at the Court's discretion. *Powell v. Nat'l Football League*, 139 F.R.D. 381, 383 (D. Minn. 1991) (citation omitted); *Pope v. Wells Fargo Bank, N.A.*, No. 11-CV-2496 (SRN/FLN), 2012 WL 1886493, at *6 (D. Minn. May 23, 2012).

Experian asserts that Ferrin's attorneys knowingly made false statements and affirmative misrepresentations of material fact in connection with the summary judgment motions, and seeks attorneys' fees for time and effort spent responding to such

statements. The Court has reviewed the record, and in its discretion, declines to award attorneys' fees. Experian's request for attorneys' fees is denied.[18]

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, it is hereby ORDERED that:

1. Experian Information Solutions, Inc.'s motion (ECF No. 66) is GRANTED IN PART and DENIED IN PART as follows:

    a. Experian's motion for summary judgment is GRANTED IN PART and DENIED IN PART as set forth above; and

    b. Experian's motion to exclude certain expert testimony of Evan Henricks is DENIED.

2. Blake Ferrin's Motion for Partial Summary Judgment (ECF No. 75) is GRANTED IN PART and DENIED IN PART as set forth above.

3. Experian's request for attorneys' fees is DENIED.


Dated: July 26, 2022                                    BY THE COURT:

                                                        s/Nancy E. Brasel
                                                        Nancy E. Brasel
                                                        United States District Judge

---

[18] The Court also denies Ferrin's request that the Court strike "defamatory" portions of Experian's pleadings. (ECF No. 95 at 10 n.7.)